**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————

FRANKLIN TOLEDO, ARTURO CRUZ VELASCO,
and DAVID CRUZ,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and the Class,*

                Plaintiffs,

      v.

DANTE GROVE ST LLC
      d/b/a DANTE,
PERRY & HUDSON LLC
      d/b/a DANTE WEST VILLAGE,
LINDEN PRIDE, NATALIE HUDSON,
JAMES SYMOND, and CHRISTOPHER CHEUNG,

                Defendants.

—————————————————————

Case No.:

**CLASS AND**
**COLLECTIVE ACTION**
**COMPLAINT**

**Jury Trial Demanded**

      Plaintiffs, FRANKLIN TOLEDO ("Plaintiff" or "Plaintiff TOLEDO"), ARTURO CRUZ

VELASCO ("Plaintiff or "Plaintiff VELASCO"), and DAVID CRUZ ("Plaintiff" or "Plaintiff

CRUZ") (collectively "Plaintiffs"), on behalf of themselves, FLSA Collective Plaintiffs and the

Class, by and through their undersigned attorneys, hereby files this Class and Collective Action

Complaint against Defendants DANTE GROVE ST LLC d/b/a DANTE, PERRY & HUDSON

LLC d/b/a DANTE WEST VILLAGE (together, the "Corporate Defendants"), LINDEN PRIDE,

NATALIE HUDSON, JAMES SYMOND, and CHRISTOPHER CHEUNG (together, the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) unpaid wages for off-the-clock work, (4) unpaid wages due to invalid tip credit, (5) illegally retained gratuities, (6) liquidated damages, and (7) attorneys' fees and costs.

2.      Plaintiffs allege, pursuant to the New York Labor Law ("NYLL"), that they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) unpaid wages for off-the-clock work, (4) unpaid wages due to invalid tip credit, (5) illegally retained gratuities, (6) unpaid spread of hours, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff, FRANKLIN TOLEDO, is a resident of Queens County, New York.

6.      Plaintiff, ARTURO CRUZ VELASCO, is a resident of Queens County, New York.

7.      Plaintiff, DAVID CRUZ, is a resident of Queens County, New York.

8.     At all times relevant to this action, Defendants owned and operated two restaurants as a single integrated enterprise under the trade names "Dante" and "Dante West Village" in the state of New York.  Defendants have owned and operated the Restaurants at the following locations in New York City:

      a.   79-81 Macdougal Street, New York, NY 10012 ("Dante");

      b.   551 Hudson Street, New York, NY 10014 ("Dante West Village" collectively with Dante the "Restaurants").

9.     Corporate Defendant, DANTE GROVE ST LLC d/b/a DANTE, is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 79-81 Macdougal Street, New York, NY 10012 and an address for service of process located at Registered Agents Inc., 90 State Street Ste 700, Office 40, Albany, NY 12207.

10.     Corporate Defendant, PERRY & HUDSON LLC d/b/a DANTE WEST VILLAGE, is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 551 Hudson Street, New York, NY 10014 and an address for service of process located at Registered Agents Inc., 90 State Street Ste 700, Office 40, Albany, NY 12207.

11.     Individual Defendant LINDEN PRIDE is a principle and co-owner of the Corporate Defendants. LINDEN PRIDE exercises operational control as it related to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. LINDEN PRIDE frequently visits both of the Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to LINDEN PRIDE directly regarding any of the terms of their employment, and

LINDEN PRIDE would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. LINDEN PRIDE exercised functional control over the business and financial operations of all Corporate Defendants. LINDEN PRIDE had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

12.     Individual Defendant NATALIE HUDSON is a principle and co-owner of the Corporate Defendants. NATALIE HUDSON exercises operational control as it related to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. NATALIE HUDSON frequently visits both of the Restaurants. She exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to NATALIE HUDSON directly regarding any of the terms of their employment, and NATALIE HUDSON would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. NATALIE HUDSON exercised functional control over the business and financial operations of all Corporate Defendants. NATALIE HUDSON had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

13.     Individual Defendant JAMES SYMOND is a principle and co-owner of the Corporate Defendants. JAMES SYMOND exercises operational control as it related to all

employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. JAMES SYMOND frequently visits both of the Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to JAMES SYMOND directly regarding any of the terms of their employment, and JAMES SYMOND would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. JAMES SYMOND exercised functional control over the business and financial operations of all Corporate Defendants. JAMES SYMOND had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

14.    Individual Defendant CHRISTOPHER CHEUNG is a principle and co-owner of the Corporate Defendants. CHRISTOPHER CHEUNG exercises operational control as it related to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. CHRISTOPHER CHEUNG frequently visits both of the Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to CHRISTOPHER CHEUNG directly regarding any of the terms of their employment, and CHRISTOPHER CHEUNG would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. CHRISTOPHER

5

CHEUNG exercised functional control over the business and financial operations of all Corporate Defendants. CHRISTOPHER CHEUNG had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

15.    Defendants operate its two restaurants, Dante and Dante West Village, as a single integrated enterprise. The Restaurants share common ownership of Individual Defendants. The Restaurants are operated as a single integrated enterprise, under the common control of the Defendants.   Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose:

a.  The Restaurants use a central marketing department, share a Facebook page located at https://www.facebook.com/dantenewyorkcity. *See* **Exhibit A**, common Facebook page.

b.  All the Restaurants share the same brand name with the same logo and are marketed jointly on one (1) common website: *www.dante-nyc.com* ("Website"). *See* **Exhibit B** for Defendants Homepage for its Common Website.

c.  All the Restaurants' locations and hours of operation are exhibited when the Website-visitor clicks the "Hours & Locations" link on their joint website. *See* **Exhibit C** for the webpage of the Website where Restaurants' locations and hours may be accessed by clicking on the links.

d.  All the Restaurants share a common "Contact Us" webpage on the Website, where all the Restaurants share one (1) common inquiry form, through which questions can be submitted about any of the Restaurants. Additionally, the Restaurants share a common email in receiving and addressing any inquiry:

Dante@Dante-NYC.com. *See* **Exhibit D** for the "Contact Us" webpage on the Website.

e.  The Restaurants' menus are exhibited when the Website-visitor clicks on each of the Restaurant links on the Website. *See* **Exhibit E** for the webpage of the Website where Restaurants' menus may be accessed by clicking on the links.

f.  The Restaurants share a common look and feel of a trendy New York City bar restaurant.

g.  The Restaurants jointly sell one (1) common gift card that is available for use at both of the Restaurants. *See* **Exhibit F** for an online form where gift cards for the Restaurants can be purchased.

h.  Employment positions for both the Restaurants are jointly listed and may be applied for through the shared Website. *See* **Exhibit G** for the Website's link to the Careers page.

i.  All the Restaurants share a common store for the purchase of Dante trademarked merchandise such as bottles, hoodies, t-shirts and hats.

j.  The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., parties or private events) when one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs. Plaintiffs would regularly engage in work on behalf of Dante West Village despite being primarily employed by Dante..

k. Employees were regularly required to transport items between both Restaurants, in accordance with the directives of central management, including the Individual Defendants. All three Plaintiffs would be tasked approximately two (2) – three (3) times a week to engage in deliveries and pickups between the Restaurants based on either Restaurants current capacity and needs.

l. The Restaurants share a common management and ownership. Individual Defendants are principals and shareholders of the Corporate Defendants and collectively manage the Restaurants. *See* **Exhibit H,** Liquor Licenses for each Restaurant.

16.    At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

17.    At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house and back-of-house employees (including delivery persons, servers, porters, busboys, food runners, barback, and bartenders) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs")

19.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them their proper overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek and their proper wages due to a policy of time shaving. A subclass of tipped employees has a claim for unpaid minimum wage, including those from an improperly deducted tip credit, and a claim for illegally retained tips. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

21.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees(including delivery persons, servers, porters, busboys, food runners, barback, and bartenders) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

22.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of amongst others, delivery persons, servers, porters, busboys, food runners, barback, and bartenders ("Tipped Subclass") who also number more than forty (40). Plaintiffs are a member of both the Class and the Tipped Subclass.

24.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same Defendants' corporate practices of (i) failing to pay proper compensation for all hours worked, (ii) failure to pay proper overtime, (iii) failing to pay proper wages, including those due to time shaving, (iv) failing to provide Class members with proper wage statements with every payment of wages, and (v) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the NYLL.

25.     With regard to Plaintiffs and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiffs and the Tipped Subclass suffered from Defendants' failure to pay minimum wage due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total

hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool and illegally retained tips, (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

26.      Plaintiffs claim that Defendants illegally retained gratuities because they were subject to a tip pooling scheme where managers participated in the tip pool.  Further, Plaintiffs claim that Mangers illegally retain tips, as Plaintiffs receive about the same in tips each week independent of customers served.

27.      Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28.      Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

29.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small

in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a.    Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d.  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked;

f.  Whether Defendants paid Plaintiffs and Class members the proper minimum wage and overtime compensation under the NYLL;

g.  Whether Defendants caused time shaving by paying Plaintiffs and Class members only for those hours which they were scheduled to work, rather than for the actual hours that they worked;

h.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

i.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

j.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

k.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL;

l.   Whether Defendants established an invalid tip pooling arrangement by illegally including managers in the tip pool;

m.   Whether Defendants established an invalid tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiffs and the Tipped Subclass did not agree to;

n.   Whether Defendants retained any portion of the gratuities for their tipped employees;

o.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL; and

p.   Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the NYLL.

## STATEMENT OF FACTS

32.   *Plaintiff FRANKLIN TOLEDO:*

a.   In or around August 2020, Plaintiff TOLEDO was hired by Defendants to work as a barback at the "Dante New York City Location" located at 79-81 Macdougal Street, New York, NY 10012. Plaintiff TOLEDO's duties also consisted of making regular deliveries and pickups to and from Defendants' "Dante West Village Location" located at 551 Hudson Street, New York, NY 10014. Plaintiff TOLEDO's employment with Defendants was terminated in or around October 2020.

b.  Throughout employment, Plaintiff TOLEDO regularly worked over forty (40) hours per week. From the start of Plaintiff TOLEDO's employment until the end of his employment, Plaintiff TOLEDO was scheduled to work four (4) to five (5) days a week from 2:00 p.m. to 11:00 p.m., for a total of thirty-six (36) to forty-five (45) hours per week.

c.  Throughout employment, Plaintiff TOLEDO was paid tip credit minimum wage at a rate of ten dollars ($10.00) per hour.

d.  Despite, Plaintiff TOLEDO's regular weekly worked hours exceeding forty (40) Defendants would fail to properly count all of Plaintiff TOLEDO's hours worked and at-all-times maintained a policy of time shaving employees of their overtime hours.

e.  During Plaintiff TOLEDO's employment, the managers of the Restaurants would improperly include themselves in the Restaurants tip pool even though they did not service customers.

f.  At all relevant times, Plaintiff TOLEDO's weekly earned tips remained substantially the same regardless of how busy a week Plaintiff TOLEDO had. Managers and owners improperly failed to pass on all gratuities that properly belonged to the Plaintiff TOLEDO.

g.  During Plaintiff TOLEDO's employment he worked at least two (2) to three (3) hours a day engaging in non-tipped activities, such as delivering supplies to Defendants' second restaurant located at 551 Hudson Street, New York, NY 10014, helping the bartender, put in all the tables at the end of the night, take

out the garbage, sweep and mop the whole restaurant, and water the sidewalk with a hose.

33.    *Plaintiff ARTURO CRUZ VELASCO:*

a.   In or around July 15, 2020, Plaintiff VELASCO was hired by Defendants to work as a food runner at the "Dante New York City Location" located at 79-81 Macdougal Street, New York, NY 10012. Plaintiff VELASCO's duties also consisted of making regular deliveries and pickups to and from Defendants' "Dante West Village Location" located at 551 Hudson Street, New York, NY 10014. Plaintiff VELASCO's employment with Defendants was terminated in or around August 5, 2020.

b.   Throughout employment, Plaintiff VELASCO regularly worked over forty (40) hours per week. From the start of Plaintiff VELASCO's employment until June 2020, Plaintiff VELASCO was scheduled to work four (4) days a week from 2:00 p.m. to 12:30 a.m., for a total of forty-two (42) hours per week.

c.   Throughout employment, Plaintiff VELASCO was paid tip credit minimum wage at a rate of ten dollars ($10.00) per hour.

d.   Despite, Plaintiff VELASCO's regular weekly worked hours exceeding forty (40) Defendants would fail to properly count all of Plaintiff VELASCO's hours worked and at-all-times maintained a policy of time shaving employees of their overtime hours.

e.   Moreover, Plaintiff VELASCO regularly worked in excess of ten (10) hours a day, but Defendants failed to provide any spread of hours premium.

    f. During Plaintiff VELASCO's employment, the managers of the Restaurants would improperly include themselves in the Restaurants tip pool even though they did not service customers.

    g. At all relevant times, Plaintiff VELASCO's weekly earned tips remained substantially the same regardless of how busy a week Plaintiff VELASCO had. Managers and owners improperly failed to pass on all gratuities that properly belonged to the Plaintiff VELASCO.

    h. During Plaintiff VELASCO's employment he worked at least two (2) to three (3) hours a day engaging in non-tipped activities, such as delivering supplies to Defendants' second restaurant located at 551 Hudson Street, New York, NY 10014, helping the bartender, put in all the tables at the end of the night, take out the garbage, sweep and mop the whole restaurant, and water the sidewalk with a hose.

34. *Plaintiff DAVID CRUZ:*

    a. In or around July 2020, Plaintiff CRUZ was hired by Defendants to work as a food runner at the "Dante New York City Location" located at 79-81 Macdougal Street, New York, NY 10012. Plaintiff CRUZ's duties also consisted of making regular deliveries and pickups to and from Defendants' "Dante West Village Location" located at 551 Hudson Street, New York, NY 10014. Plaintiff CRUZ's employment with Defendants was terminated in or around August 2020.

    b. Throughout employment, Plaintiff CRUZ regularly worked around (40) hours per week. From the start of Plaintiff CRUZ's employment until the end of his

employment, Plaintiff CRUZ was scheduled to work four (4) to five (5) days a week from 4:00 p.m. to 12:00 a.m., for a total of thirty-six (36) to forty-five (45) hours per week.

c.   Throughout employment, Plaintiff CRUZ was paid tip credit minimum wage at a rate of ten dollars ($10.00) per hour.

d.   Despite, Plaintiff CRUZ's regular weekly worked hours exceeding forty (40) Defendants would fail to properly count all of Plaintiff CRUZ's hours worked and at-all-times maintained a policy of time shaving employees of their overtime hours.

e.   During Plaintiff CRUZ's employment, the managers of the Restaurants would improperly include themselves in the Restaurants tip pool even though they did not service customers.

f.   At all relevant times, Plaintiff CRUZ's weekly earned tips remained substantially the same regardless of how busy a week Plaintiff CRUZ had. Managers and owners improperly failed to pass on all gratuities that properly belonged to the Plaintiff CRUZ.

g.   During Plaintiff CRUZ's employment he worked at least two (2) to three (3) hours a day engaging in non-tipped activities, such as delivering supplies to Defendants' second restaurant located at 551 Hudson Street, New York, NY 10014, helping the bartender, put in all the tables at the end of the night, take out the garbage, sweep and mop the whole restaurant, and water the sidewalk with a hose.

18

35.    At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were not paid overtime premium for hours worked more than forty (40) hours per week. Defendants knowingly and willfully failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class members the proper overtime premium rate of time and one half of regular hourly rate for each hour exceeding forty (40) hours per workweek.

36.    At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were not paid for all hours worked due to Defendants policy of time shaving. Managers of Defendants would go to the computer and shave off time for Plaintiffs and other employees. Defendants knowingly and willfully failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class members the proper minimum wage and overtime premium for all actual hours worked.

37.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked due to a policy of time shaving.

38.    Plaintiffs, FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for twenty percent (20%) or more of their workday.

39.    During Plaintiffs' employment with Defendants, Plaintiffs were required to engage in various non-tipped activities, such as setting up all the tables, taking out the trash, putting in all the tables at night, sweeping and mopping the restaurant, watering the sidewalk, and transferring food between restaurant locations, for twenty percent (20%) or more of the workday. Other tipped

employees employed by Defendants were required to do similar non-tipped activities for twenty percent (20%) or more of the workday.

40.    Plaintiffs and other tipped employees did not receive notice that Defendants were taking a tip credit, in violation of the NYLL. In addition, Plaintiffs and the other tipped employees did not receive any notice as to the amount of tip credit allowance taken for each payment period during their employment. They were also never informed in writing as to their hourly rate of pay and overtime rate of pay. Therefore, any purported tip credit taken by Defendants with respect to Plaintiffs and/or tipped employees is invalid.

41.    Plaintiffs and the Tipped Subclass suffered from Defendants' retention of gratuities through Defendants' invalid tip pooling arrangement. Defendants implemented a policy at the Restaurants where Plaintiffs and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants, wherein managers participated in the tip pool. As a result, Defendants illegally retained tips through the tip pooling arrangement by retaining a portion of the tips to be distributed to Defendants' managers, who did not serve customers. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

42.    During employment by Defendants, Plaintiff VELASCO regularly worked shifts exceeding ten (10) hours in duration. However, he never received any spread of hours premium for working such shifts, as required under the NYLL. Similarly, Class Members regularly worked shifts exceeding ten (10) hours in duration but were never paid spread of hours premium.

43.    Defendants failed to provide Plaintiffs and Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the NYLL.

44.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants failed to reflect the actual number of hours worked and also failed to provide Tipped Subclass Members with proper pay stubs reflecting the tip credit claimed by for each pay period.

45.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

46.     Plaintiffs reallege and reaver Paragraphs 1 through 45 of this Class and Collective Action Complaint as if fully set forth herein.

47.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

49.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

50.     At all relevant times, the Defendants failed to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs who were tipped employees for their hours worked.

51.    At all relevant times, Defendants failed to pay compensation, including overtime, at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek due to Defendants' time shaving policy.

52.    Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them minimum wages in the lawful amount for hours worked.  Defendants were not entitled to take any tip credits under the FLSA, because they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees.

53.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting an illegal tip pooling scheme in which management retained a portion of the tips and included managers in the tip pool.

54.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

55.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their intentional failure to compensate Plaintiffs and FLSA Collective Plaintiffs for every hour they worked, including regular hours and overtime hours.

56.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

57.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

58.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage, unpaid overtime wages, unpaid wages for off-the-clock work caused by time shaving, unpaid wages due to invalid tip credit, damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated damages.

59.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

60.     Plaintiffs reallege and reaver Paragraphs 1 through 59 of this Class and Collective Action Complaint as if fully set forth herein.

61.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

62.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the minimum wage required by the NYLL.

63.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

64.     At all relevant times, the Defendants engaged in a policy of time shaving, refusing to compensate Plaintiffs and Class members for all of their hours that they worked each week.

65.     Defendants willfully violated Plaintiffs and the Class members' rights by instituting an illegal tip pooling scheme in which Class members were required to share tips with

management. In doing so, Defendants willfully deprived Plaintiffs and Class members of their

lawfully earned wages.

66.    Defendants knowingly and willfully operated their business with a policy of not

providing proper wage statements as required under the NYLL.  Defendants are required to provide

itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the

requirements under the NYLL because such tip credit allowance was never clearly included in

wage statements to tipped employees for each payment period. Defendants also provided

fraudulent wage statements that failed to accurately reflect the number of hours worked and their

proper compensation, including tips illegally withheld from Plaintiffs and Class members.

67.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to

pay them proper wages in the lawful amount for hours worked. Defendants were not entitled to

claim any tip credits.

68.    Defendants knowingly and willfully violated rights of Plaintiffs and Class members

by failing to pay "spread of hours" premium to them for each day they worked ten (10) or more

hours.

69.    Defendants knowingly and willfully failed to provide Plaintiffs and Class members

with proper wage statements as required under the NYLL.

70.    Defendants knowingly and willfully failed to provide Plaintiffs and Class members

with proper wage and hour notices as required under the NYLL.

71.    Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled

to recover from Defendants unpaid minimum wage, unpaid overtime wages, unpaid wages for off-

the-clock work caused by time shaving, unpaid wages due to invalid tip credit, damages

representing disgorgement of illegally retained tips, unpaid spread of hours premium, reasonable

attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid minimum wages due under the FLSA and the NYLL;

d. An award of unpaid overtime compensation, including compensation due to Defendants' policy of time shaving, due under the FLSA and the NYLL;

e. An award of unpaid wages due under the FLSA and the NYLL, including those due to an invalid tip credit;

f. An award equal to the amount of the improperly retained tips withheld by Defendants;

g. An award of unpaid "spread of hours" premium due under the NYLL;

h. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage pursuant to 29 U.S.C. § 216;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty (40) per workweek, pursuant to 29 U.S.C. § 216;

k.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, including spread of hours, pursuant to the NYLL;

l.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

m.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

n.  Designation of this action as a class action pursuant to FRCP 23;

o.  Designation of Plaintiffs as Representatives of Class; and

p.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: February 1, 2021

Respectfully submitted,
By: ___*/s/ C.K. Lee*_____
      C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiff and the Class*